May it please the court, Sam Hartzell for petitioner Daniel Lopez Ordonez. This is a case about a 15 year old boy who was taken from his home by force and required to serve in the unit of the Guatemalan military that was committing widespread human rights abuses. And he testified credibly before the immigration judge that he was ordered throughout his service to murder and because of his deeply held Christian beliefs and he was beaten in response. This went on for years until one day in 1996 things got much worse for him. Now these facts are difficult to read, they're difficult to talk about, but the immigration judge found testimony here credible and the severity of the persecution Mr. Lopez Ordonez suffered is critical to understanding the agency. Can you speak up just a little please? The severity, the increase in the persecution he suffered is critical to understanding his argument below and his argument here. Three things happened to him in 1996 that were unprecedented. While he'd been beaten for years these things had never happened before, nothing like them. One, a soldier in his unit murdered an infant by beating Mr. Lopez Ordonez with the infant. Two, as soon as he returned to the military base he was thrown in a hole in the ground and kept there for ten months in solitary confinement. And three, he was fed while in that hole in the ground under circumstances that required him to ingest his own urine and feces. To prevail it's religious beliefs and the abuse. Another one you say is a nexus between anti-military political opinion and the abuse. That's right. Speaking to the religion, where is it that indicates it regardless even in light of all of these atrocities, the worst facts here, it doesn't seem to care anything about his religious beliefs in doing this. I mean and we're looking from, I think we look from the perspective of those who were doing it not necessarily. I agree with that your honor. So I frankly don't see any connection with religious belief and this abuse. I think the factual record is clearer with regard to political opinion but on religion I think it is twofold. One, his religious experience explains why he and not somebody else was the person who suffered years of beatings. The fact that he is a Christian who holds these beliefs and refused to give them up when put in a situation where his life was on the line. He said no it's better for you to kill me than for me to have to do these things. So it's his adherence to those religious beliefs that caused him to be a target. But more importantly. So that's the connection. That perspective seems to make it clear. He understood it would be his religious beliefs. The question is, the people who were doing it, do it. Was there a nexus between what they were doing and they were doing it connected with their religious beliefs? Understood. I think it is fair to say that his refusal to follow orders at least with religion was the immediate trigger for his persecution. That is what caused in the background need not be the only reason for the persecution. Understood. But what did he say to whom about his religious beliefs? I mean it just seems to me somewhat conclusory. And I don't, you know, to whom did he profess his beliefs being the reason for the persecution that was taking place. I want to say preliminarily that I do respect the fact that there's been persecution here and that he's suffered a great many hardships. I don't for a moment make light of those. But the religious belief business seemed fuzzy to me because I didn't understand how he had professed it, to whom he had professed it, whether somebody said anything about it. The nexus requirement seemed very fuzzy there. It is true that nobody invoked his religion as the reason for his persecution. That's different for political opinion. But for religion that's true. The two places in the record where I think you can see most clearly what happened are in the immigration judge's ruling on page 68 of the administrative record where the immigration judge found that he's told his supervisors that he would not kill or torture because of those beliefs and informed his superiors of that. In his testimony on page 286 of the administrative record, he was asked, what did you say when people told you to murder and torture? And I'm quoting his testimony now before the immigration judge, which again was found credible. He said, I would say no. I wouldn't do it. My parents raised me with Christian principles and I would say it's better for you to kill me than for me to have to do that. That's why they tortured and beat me. That's 286 of the administrative record. What political opinion are you talking about here? What do you mean by imputed political opinion? What was the political opinion? I'm going to blow the whistle on these human rights abuses. I'm going to tell the international community that the Guatemalan military is murdering children. Where is that expressed? In his testimony to the immigration judge and in the findings of the immigration judge as well. That he had expressed to the Guatemalan military that he was opposing them? Not that he was opposing them. Did he express this political view to the Guatemalan military? Yes. The record is clear that he said, if you do that, if you murder that baby, I am going to report this unit to international human rights organizations. And the record is also clear that when the soldiers who beat him took him back to the base, they told the superior there, he threatened to report us to international human rights organizations. And it was at that moment where he was thrown in a hole in the ground for 10 months. So, when we look for the nexus, there's two reasons I think a nexus is compelled by this record. The first is circumstantial evidence. He's had a horrible experience for years. He's been refusing to follow these orders to murder. He's been getting beaten. Well, let me know. I don't think anybody disputes the fact that this is a tough crowd and that they're a brutal crowd. But in trying to determine the whole question of causation, the great emphasis appears to be that he was, the persecution he experienced was because he failed generally as a matter to follow orders. Not because of a political opinion necessarily, but because, you know, as happens in military, in all military organizations, if you fail to follow orders, there are consequences for that. And there are all sorts of statements for JA611. It says he was persecuted because, quote, when I was in the Guatemalan military and I refused to follow their orders anymore, I was detained and tortured by them. And then later on in JA194, I was subjected to abusive treatment when I disobeyed their orders. And they said that he was kept in the Guatemalan military and they didn't release him because he knew how to drive a Jeep or a truck. And others did not. And I just have the question here, I don't doubt for a minute, the IJ found his testimony credible, and I don't doubt for a minute that he was subjected to some awful treatment. I don't think that's really in dispute. I just wonder whether it's due to the general condition in the military that people suffer consequences for refusal to follow orders as a general matter. And that this was a particularly tough crowd which would insist on discipline regardless of any political opinion that someone might or might not happen to hold. A few responses, Your Honor. One, I'm not denying that refusal to follow orders was one of the reasons for the persecution. But in Alvarez-Lagos, in this court's opinion, and in Minghecia v. Gonzalez, 450 F. 3rd, 142nd, the court stressed that it is legal error to focus solely on finding one arguably legitimate reason for the persecution and to stop the analysis here. And the second point I would make is these aren't arguably legitimate reasons for the persecution. It fails to take into account the nature of the orders he was given and the severity of the punishment he received. Do we have specificity with respect to that? With respect to the nature of the orders he was given? Yes. Yes, Your Honor. He testified repeatedly that I was ordered to murder and torture. He does not get into details of whom he was asked to murder or the nature of that torture. But the night in the village where he's ordered to murder the five-month-old baby, there is gruesome detail there about what he's ordered to do. I mean, murder and torture is terrible, and opposition to them is a very widely held thing. I don't know of anybody in this room who would not be opposed, deeply opposed, to any kind of murder and torture. But if opposition to murder and torture, which we all hold deeply, is a political opinion, where is the limiting principle to that? Because opposition to murder and torture is something that's held around the entire globe. I agree with that. And I think the place that most makes that clear is in the Supreme Court's opinion in Elias Zacharias, 502 U.S. 478. What they say there is resisting coercion into a guerrilla organization is not necessarily a political opinion. You have to show more. You have to show motive, in the words of the Supreme Court, to show direct or circumstantial evidence. Here, the circumstantial evidence is the dramatic escalation in the persecution he suffered as soon as he said, I am going to report you to international human rights organizations. His father came and said something about he was going to report this and that to human rights organizations. Nothing ever happened to his father. I don't know the records on that point, but his father, from all I can tell, apparently died of natural causes. And so if this were the reason for the persecution, wouldn't something have happened to his father? Well, his father did die under circumstances that he testified were suspicious. We don't have details on that. But I want to make sure I raise the second point, which is the direct... I just wish you could have been more specific, not you. I'm talking about the counsel on this. This fellow has endured a lot of hardship, and I would like to rule in his favor. But the case wasn't developed as well as I wanted it to be. What is his religious view? What nexus does that bear? That's vague. And then the political opinion is something to be held by a lot of different people. That's vague. And his utility to the Guatemalan military was as a tough guy and somebody who would carry out orders and somebody who could drive him around and all around. And when they say, well, he's just a little kid. We're going to really toughen him up. And that's terrible. The whole group of them is terrible. But I just wish that you could move this out of the hard cases make bad law category with some concreteness and some specificity. Because I'm drawn sympathetically and as a matter of just pure human empathy to what you say. But it's not a general hardship statute. And this case is made so inferentially. And if it's made so inferentially, you have to then go back to the finder of fact. And Elias Zaccarelli, which says we have to affirm unless no reasonable fact finder could find to the contrary. But a reasonable fact finder here could find that the reason for all of this was just military hierarchical command. And the need to maintain discipline within the ranks, particularly with these guerrilla groups and terrorist organizations. They're not interested in somebody's political beliefs or their religious beliefs. What they're interested in is maintaining cohesion and uniformity. And if you cross them, you're going to get persecuted tragically and unhappily. But that's where they come from is you better do what we say. They're not that interested in human rights organization. They're interested in just no matter what, maintaining the discipline. And a fact finder, could a fact finder given the vagueness of the nexus in the case, could a fact finder reasonably find as the fact finder did? I'm just upset that this case was not presented with a greater degree of clarity. I don't lay that at your feet for a second. But it just wasn't developed. You must know that. I understand that, Your Honor. May I respond briefly on the two limiting principles? I think there's two limiting principles here. One is there was direct evidence of the persecutor's motivation. And that was he testified on page 292 of the administrative record, again found credible, that he was pulled out of the ground and beaten while his persecutor said, call human rights to protect yourself. So not only is it circumstantial, but we have people in the middle of the persecution explaining at least awareness of his expression through threat to report to the military. And the second limiting principle here is that this is a unique circumstance where you have a person who has established a baseline for how the military responds to refusal to follow orders and then not only opposes murdering babies, which all of us clearly would do, but has the courage to say, you're going to have to kill me. You may not do that. And he is lying on the ground, expects to die. That is his testimony. He expects to be killed for the fact that he has said, I'm going to report you. This is not the kind of organization that tolerates people going to international organizations. So those two remarkable facts, the direct evidence during the persecution and the dramatic escalation after he vocalized his expression, are the limiting principle, Your Honor. Thank you, counsel. Mr. Holt. May it please the court, John Holt for the Attorney General. It's always a high privilege before this court. The issue before the court is exactly as each of you have just stated. It's whether the military officials that were seniors were motivated to punish, to threaten Petitioner because he refused to obey military orders or because his religious beliefs or political opinion. Judge Stanley Sporkin, a district court judge in the central district, in the U.S. District Court in Washington, passed on a legendary saying. It's very helpful. He said there's always a key that unlocks every case. He said the problem is to find the key. And the key here is the motivations of the persecutors. Well, let's examine. There is a disobeying orders. We can't look at this military as we would in Western context that this is a legitimate military to disobey orders. It's one thing. But in this instance, getting away from the religious connection on the nexus, moving to the anti-military political opinion nexus, I think bears some examination because this is not an instance where you're simply thinking about murder as bad. You've got a gun pointed to his head that tells him you've got to do this. And it's not an instance in which we just have people thrown into holes. Not everybody is thrown into a hole to eat human excrement for 10 months. That's a different thing. And then as your opponent indicates, there seems to be direct evidence here. First, he indicates quite clearly he's going to report this to a human rights organization. Then you have the G2 soldiers standing over sort of mocking, acknowledging they know that's what he wants to do. There's a Ninth Circuit case, the Ramos case I think it is, that I think speaks to this point. And it essentially says that inhuman military conduct can be part of a political opinion claim. If there's a head to be hung here, it's there in this case. As I said earlier, I'm not so sure it meets the religious problem. We can spend time on that, and maybe we need to. Or the disobeying of the orders only because the orders, yeah, you don't go into the military to disobey orders. But we're talking about a legitimate military. When an order goes down to you must kill that five-month-old baby right there, and when you refuse, they take the five-month-old baby and beat him with the five-month-old baby, killing the baby and punishing him. I mean, that doesn't fit Western or even normal concepts of what a military is about. So the question here is, does that persecution in and of itself create a political opinion nexus? The answer to that question is no. Merely the persecution does not establish the nexus, those events. The immigration judge on page 71, page 68, footnote 2, the agency did not ever challenge that this petitioner suffered persecution. The immigration judge on page 71 said, I'm most sympathetic just as each of the judges of this court have come to the conclusion. So clearly we all agree there was persecution. We do not challenge that. But this is not just persecution. The Ninth Circuit said inhuman military conduct can be part of a political opinion. Ramos case says that pretty clearly. It seems reasonable in the context of what happened here because you've got this additional statement he makes. He says, which as you say, that doesn't count because it's the prosecutors. But they then say it back to him in the context of it. And this goes on for years. He's not obeying their orders to do these things. And it's clear he's not into the fold with this military. He's not a part of this military. He's letting them know, I am totally against the way you do business here, killing, murdering, torturing kids, people killing babies. That's something I'm not going to be. I'm anti to something you as a military do, which is a political opinion in light of the Ramos case. As you and Judge Wilkinson both have focused on, the point, though, is on the motive of the persecutors, his G-2 colleagues that were abusing him and mistreating him. And perhaps the most helpful thing I can say this morning to help the court in deciding this case is, the focus has to be on them and not him. It's really that simple. But that's my point. The other ones who brought up the human rights organization, they did that, the G-2 people. And G-2, they don't throw everybody in the holes. It's not like everybody disobeys the order. They don't get thrown in holes to eat excrement for ten months. So the point is, when you look at what they are doing, and this is different from a religious type of persecution, and the anti-military political opinion is different, particularly when we step out and no longer look at it as though we're looking at the military of the United States of America. We're talking about a totally different animal here, in which he's telling us, I'm not going to do that. Well, I think there are two points. Number one is to appreciate the context in which all this arises, and that is the WHO. The WHO is the G-2 military unit that he was a part of. He was a 17-year veteran. And if you turn to page 241, while it is dramatic and it is heart-wrenching in the particulars of what occurred, there's more that's on 241 than what you've heard so far. That was a military operation to take out gorillas. And Petitioner participated in killing five gorillas and beheading them. That's his testimony. He participated in decapitating prisoners that had been captured. And so for him to say that he never participated in killings, he didn't participate in killings when he bound the hands of people that were interrogated. Wasn't he threatened at that point? He was threatened at that point. He had a choice. He could participate or he was going to get shot and hit. There was no indication that he was threatened at the time he participated in the decapitation of the military members. Did he do that under protest? There's nothing to indicate that he did. What he did is he protested when they said take out the child. He did what? He asserted to refuse the order to take out the child. I'm talking about when people were being beheaded and they were being decapitated. Those were adults you were speaking of? Page 241, they said to get the big ones, they said to kill them, the gorilla members, so we killed them chopping off their heads. There was absolutely no indication in his testimony at that point in time. And factually, and this is just a context to understand his involvement in the military, is that he did participate in that, and when they said take out the child, then he refused to do so. He participated in the decapitation and beheading, and he didn't say if you do this, I'm going to report you to human rights organizations or whatever. That's right, and that goes back to your point, Judge Wilkinson, and that is the important thing is to understand the context of this occurring. This is not a gang situation and a mother like the Cruz case. What this is, this is a military organization that he was a part of for 17 years. That military organization sounds like it was worse than any gang I've heard about. I don't know if maybe your point is that because he stayed in it, he really bought into their political opinions, so he was really a part of them. And yet, throughout his service, he didn't do this. Even when you look at the findings, you say he testified he didn't protest in that incident. I'm not sure that's clear from what he testified because, I mean, chronologically, he's all over the place in terms of what's going on here, what's happening there in that testimony. So I don't think it's that clear he did not protest. Well, I would submit to you that it's clear that he's a 17-year veteran and he was promoted all the way from private to sergeant, and you get promoted in the military, as Judge Wilkinson just said, when you obey orders. Mr. Holden, I thought you said you concede that he was persecuted. We do concede that he was persecuted. There are events here that are in this. Well, if you do that, then you seem like you argue that almost, well, he kind of deserved what happened because he was a part of it. But that just seemed like what you, to me, the implication or the inference could be drawn from what you're saying. Let's get back to persecution. You said why is this not based on his religion? It's not based on his religion because it's based on his refusal to obey military orders. See, that's in the context. We would say to the court to be influenced by the persecution is to be diverted from the focus where the case must be. But it doesn't have to be the sole reason. Yes, he is in the military. I mean, the logic of that is you say, well, everything that you do, no matter what the reason is, family, religion or whatever, political, you have to first disobey a rule. That is true. So it comes with it. But the point is in terms of his religion, what he said was he said, my Christian faith or my belief is that I cannot kill a child, and even that means that you killed me, correct? Isn't that the sum and substance of what he told you? He said, I'm a Christian. I cannot do that. And even if it means that I die, I will not carry out that order. That's focusing on him and his belief. That's exactly right. Well, you have to focus on his belief because he has to at least hold that belief, correct? That's right. It has to be legitimate. And that's not disputed, that he holds the Christian belief. It's not disputed, but it focuses on him and not them. The point is they had to persecute him and mistreat him and threaten him because of that belief. Well, they did. As a matter of fact, it's to the point, I know it's hard to even say this, but the point is this. You say you're a Christian, you can't do this. And in reaction, I'm going to show you that not only will we make it the child is going to die, but we're going to make sure we use your body to be the actual force that killed the baby and do something that's so despicable as to beat the baby to death and leave the mark of the baby's body on your scar you for life. The scar is still on his head, but the baby's head or some part of the baby's body clashed with his head, and that is in response to his Christian rejection to what they offered him to do. I can't think of any more despicable and incredible act. And then to say no, even if I perish, I perish, but I will not go across this line. And they understood that because they don't want other people to rise up and say my religion stops me from doing it. Let's make an example, and the example is so horrible because you can imagine how that went throughout the ranks. You guess what? They beat a guy to death with a baby because he asserted his Christian rejection. Why is that not relatable? I think we are so used to people professing religion and being a tragic witness to religion, and we don't know what true religion is in terms of Christian, because it is to do the highest thing is to give your life for another person, to lay it down. Why is that not Christian? Why is that not a profession of your faith, and the direct object is to be beaten, a baby beaten on your sacrificial body? Can you tell me why not? Why is it because nexus? That isn't a nexus. His religion. Maybe that's not important to the government. Oh, it's most important to the government. If it's important to the government, then why don't you understand that that is so important to his Christian faith? On page 241 and 242. On page 241. I'm going to tell my question to you. If you profess that the government is so important, why is that not a nexus to his faith? In the attorney general's position here you represent, why is that not a nexus to his faith? Mere persecution in the events of persecution do not establish nexus. You call this mere persecution? Any persecution. It's outrageous persecution. But what I would say to you is that would the court not appreciate that every fact has to be considered in context? Would the court not appreciate that every fact has to be? The court would appreciate every fact. Certainly everything is in the context. But there are some things that are so incredibly un-American, I would think, un-human, that there is no context that can explain this away. I would give one word that would explain the context away, Your Honor. Please do. The word is war. War? War. This was war. I thought in our country we don't call that war. That's why you have Geneva Convention and articles of war that this far goes beyond. We can't call this just war, do we? We live in a country where we would call that these acts are justified by anything called war. To be the baby to death on a person's body, we call that war? Make it unequivocally clear, Your Honor, the government does not defend at all. You say it's war as if that's a line of protection to the government's position. No, I said to Your Honor that in order to determine the issue in the case, which is nexus, you should consider the facts in the context that they occur. Petitioner had just participated in beheading five captured guerrillas. Why do you keep going back to he deserved this? No, no way did he deserve that. No one would ever deserve that. How is that responding to my question about his act of defiance for his Christian faith? Because this isn't the United States military, and they're not the benefit of Article 92 of the Uniform Code of Military Justice. This is in the United States. You obey lawful orders. This is Guatemala, and it's quite clear that there was no Article 92. There was no restriction on the military from taking action against members of their units who refused to do what they told them. So what's your point? Because he joined an army that's not restricted by those rights, then he must obey whatever they tell him? My point is very simply this, is words are a door to truth. As Judge Wilkinson said. Words are what? Words are a door to truth. Words are. And Petitioner? Actions are a better gateway to it. Actions are also. And the actions that he, let's go to each one of those. First of all, in terms of the actions, nine times he testified he refused to obey orders. Nine times he testified he refused to obey orders. Only one time in the record did he ever state why he was persecuted. And he said, because I refused to obey orders. On page 176? The other people were captured. Again, you brought this up. The other people were captured enemies? Yes. All right. Was the baby executed? I didn't say they did. Yes. You brought the context up beyond, because I thought you conceded persecution. You want to go back in that sense. You don't think the baby made a difference? Make it unequivocally clear. Yes, Your Honor. You don't think the baby made a difference? It is horrendous. I said this is one time you lift your finger. The one time he raised an objection. Don't you think that one time is different than the other context you just gave or the nine you talked about? I'm just not justifying it. Does it not? You raised it. Does it not? The mere fact that he has a religious belief and refused to participate? Yes. It comes a time there's a line. That's a line that he can't justify. You're right. War does justify things. Somebody's shooting at me, I shoot them, those kind of things. But it comes to, like, killing a five-month-old baby, that there's a line. And I thought that our government would recognize that that is a line. This would be a different case and say, you know, that's incredible. That didn't really happen. Oh, it did happen. I know. That's what I'm saying. That's why this case is different. That's why the facts are horrendous and why the agency has never, and above all, the government of the United States does not come in and defend anything with regard to persecution of petitioner. The immigration judge said, as Judge Wilkinson pointed out, we're all sympathetic. Our hearts are broken when you read this pain. But we didn't make the rules. The Congress of the United States made the rules. And they said, in spite of the persecution, in spite of how horrendous the facts, you have the burden of petitioner to establish a nexus, that you have to be persecuted because of your race, creed, religious beliefs, political opinion, or particular social group. In this case, it's only two things. Either it's political opinion and it's religion. One thing I wonder about is, if he was in the Guatemalan military for 17 years, I do wonder why there aren't more examples of his political belief or his religious beliefs. I mean, over a 17-year period, this is all we have. In many of these asylum cases, you have evidence of a consistent affiliation with a race, racial or ethnic group, which is the object of persecution, or a history of opposition to a particular leader, or a history of affiliation in some way with a political group, or an affiliation with a Christian organization. Those have been the kinds of cases where we have established, yes, there is the existence of a political opinion or a religious belief. I'm just wondering again why, over 17 years, we have at most these fleeting statements. And then I wonder, during the 17 years, was there any attempt on the part of this individual to disassociate himself from the Guatemalan military, or to leave the Guatemalan military, or whatever, you know? He just kept getting promoted. But the usual cases that we have are just, as an evidentiary matter, stronger than this. The political affiliation and the political belief is more pronounced or more durable than what you have here. You've got a heartbreaking case, but, you know, you can... There's the fact you have to find some limiting principle here, and that's what I'm searching for. If I may, two points. Number one, if the court, bad facts make bad law. And just to attempt to share with you, I think the vulnerability of the court in deciding this case is to let the outrageous, horrendous, Judge Gregory, I don't know of any other words I could choose, persecution here, wipe out of the congressional statute the word because, and the nexus requirement. That's the point of judgment. And in that point of judgment, you had a prior colleague, Judge Irvin, who had a dad that was Sam Irvin, that gave us, those of us that love the law, gave us this maximum of truth in terms of burdens. He said when he graduated from Harvard Law School, this is Judge Irvin, his father called him aside and said, son, salt down the facts, the law will keep. And what that relates to is burden. This case, Christ... That's what makes it difficult for us here. It is. And it's not just that he went 17 years and did nothing. They found out he could drive. So they sort of put him over there to drive. You can be in an organization you absolutely do not go along with, but driving a truck wasn't something he perceived as a major thing. The problem was there's evidence in the record that seems to be inconsistent with I.J.'s finding to show that for five years, he said for five years, every time they ordered him to kill or do something of that nature, he disobeyed that order. He wouldn't do it. His conduct has nothing in the record other than what seems to be indicated in the decapitation period there, which I don't think it's clear in there that he didn't protest or that his actions weren't under at least a threat to do something. But it's very clear that during this period of time, he's disobeying every one of those orders, and he's making it clear he won't do it. From that perspective, they had to have known that he was anti-military in terms of what they were doing. If you don't obey any of the orders to kill in the manner they're killing him and in the torturous, inhumane way they're doing it for five years, that's a pretty good indication they know that you can't be counted on for that. You're not with them. The point of judgment is does the evidence compel the reversal of the immigration judge in the board's decision that the reason why they inflicted this persecution was because he refused to obey orders? His decision was made that he just disobeyed orders. He didn't consider it in the light that that in and of itself could be political opinion if it's done in a manner in which your disobedience is of inhumane military orders consistently for a period of over five years. His idea was he just disobeyed orders. I mean, that's a Nazi thing. You just went in there. You're not in a situation. The Nazi people told you to do it, and you just disobeyed their orders. You weren't against them in terms of what they did, and they make you a driver. I mean, there's a historical context here in what's going on. It's so striking to see how those kind of parallels can be exampled here. Where is he now? Didn't they send him back? No, I don't think he's been removed. Petitioner's counsel may give you an insight on that. I think the important point is that the Guatemalan military, they didn't care why. They cared what. Why? Because he disobeyed orders. They don't care any reason at all. And he didn't disobey orders, and the evidence does not compel reversal of the agency's decision in this context. Thank you. Thank you, counsel. Yes, Mr. Hartzell, we have some time reserved. Counsel, let me ask you, when the beheading and decapitation was taking place, did he object? And if he objected, on what basis did he object? He objected on two bases. First, he said, you know, that is immoral. I believe he invoked his Christian beliefs at that point specifically, but he certainly has been invoking them throughout the course of this. But he also objected by saying, if you do that, I'm going to report this unit to international human rights organizations. Can you read me the page from the joint appendix on that point? The page number or the actual testimony? Not the page number, the actual testimony. Give me the page number. It's at 241, Your Honor. It's at what page? 241 of the administrative records. So he says there were five kids. There was a baby. And this is through a translator. A five-month-old baby. And they said to me, we want you to kill him. I said to them, no, I would never do that. I would rather get killed before I do anything like that. A little baby like that one, he's not entitled to die. And God would never allow something like that to happen. They beat me. They beat me up so badly all over. And suddenly they grabbed the baby, and I don't even want to think about it, what they did to the baby. One of them grabbed the baby by his feet and tried to hit me with it, with the baby. And I said to him, if you do anything, something like that, I'm going to call the human rights right now. He grabbed the baby and hit me with the baby right here in my forehead. And it was a huge collision between the two of us and the baby in my forehead. Take a look at my forehead. There is a scar right there. So they killed the baby using my body. I just went to the ground, and the bloody baby, they put him on top of me. I was just waiting for them to kill me right at that moment. But it didn't happen. Over the 17 years, apart from the baby, the other beheadings and decapitations, which were with respect to adults, did he object to those? On what basis did he object? His testimony is that he always objected, and that he always explained it was because of his religion. And that's encapsulated, among other places, in the immigration judge's findings. Did he participate in the beheadings and decapitations? Not in the immediate sense. He was a driver. But I want to be clear here. The government argued below that he participated in these activities, and that should be a bar. The immigration judge and the BIA did not reach those arguments. You can see that at Administrative Record 71, Note 6. And this court held in Olivia v. Lynch, 807-5-3-57-58, that this court can only affirm on the basis given by the court. Furthermore, the BIA has recognized recently that duress is a reason, is an exception to the persecutor bar. And the evidence here is clear that he not only feared himself would be killed, but his mother, his father, his brother are local, and the G2 has threatened to kill them if he does not obey. So he is very much acting under duress. But he did not chop off anyone's head or participate in any of these acts directly, although he did act as a driver. Has he been removed? Yes, Your Honor. About eight months ago, he is, as far as I'm aware, currently in Guatemala, and he would prefer to be in detention in the United States than in Guatemala because he is, as he testified here in the record, afraid that the members of the G2 who persecuted him before are going to find him and they're going to ask him if, quote, the United States human rights, close quote, was able to protect him. What relief are you asking for, your man? For the proceedings or what? Yes, Your Honor. We're asking you to reverse the nexus determination and remand back to the agency for further proceedings. Why, after 17 years, don't we have more frequent or more concrete evidence of a political opinion? See, this is a thing because the facts of this case could not be more sympathetic, but when you ask what the fallout from the facts are, the dangers of turning this statute into a general hardship statute, which is what I worry about, or a statute which says any time there's persecution and we disapprove of it, which we would always do, we would always disapprove of it, that we've got to grant asylum. We're going to reason from the persecution on back. So help me out here and tell me what the limiting principle is because I can think of anybody who is seeking asylum anywhere and is a member of a foreign military organization or even more just the recipient of general hardship and persecution would come up and if the persecution is deplorable enough and it's deplorable here, then we would be required to grant asylum and I'm worried that that's not the statute that Congress wrote. So tell me what the limiting principle is here. Help me out and give me a limiting principle, not just that these facts are awful. The limiting principle is threefold. Expressing this view to the persecutors under the circumstance where he's risking death, the nature of the military that he is serving and the orders that he's being given and the credibility finding here. And I want to be clear, this is an imputed political opinion case, so the question is categorically incorrect to focus on whether or not he has a genuine political opinion. The question is would the G2 have perceived him to have one and verbal expression in opposition to the regime and its conduct, I would submit is the prototypical expression of political opinion. I'd be happy to answer any further questions, Your Honors. I think that's it. Counsel, I just want to note that you are a court opponent and I wanted to express on behalf of the court how much we appreciate that. We depend on lawyers like yourself to help the court and we appreciate very much. And Mr. Holtz obviously represents your able representation of the attorney gentlemen today. We'll come down to the counsel and proceed to our last guest.
judges: Roger L. Gregory, J. Harvie Wilkinson III, James A. Wynn Jr.